* On July 1, 1939, the Supreme Court filed an opinion denying the petition for a rehearing, in which that Court stated that it only passed on the first assignment of error and did not pass on the merits of the case.
This is a suit by the heir at law and administrator to set aside or cancel a contract and conveyance on the grounds of insanity, fraud, duress, and undue influence.
The original bill in this cause was filed in the Chancery Court of Cannon County by J.F. Pinkerton, a resident of Cannon County, who had been appointed in Rutherford County as administrator of the estate of his son, James F. Pinkerton, deceased, in his own right and as such administrator, against J.H. Jernigan, executor of the will of A.J. Jernigan (of Cannon County), deceased, a resident and citizen of Childress, Texas, and Mrs. Rosa Fox, a citizen and resident of Rutherford County, Tennessee, defendants, to have set aside and *Page 161 
rescinded a contract and a deed executed by James F. Pinkerton, deceased, conveying his property to Mrs. Fox, on the grounds of insanity, fraud, duress, and undue influence, and to enjoin the executor, Jernigan, from paying the legacies to Mrs. Fox.
It was alleged in the bill that James F. Pinkerton, son of the complainant, J.F. Pinkerton, had recently died in Rutherford County and that J.F. Pinkerton had been appointed and qualified as his administrator; that James F. Pinkerton was of unsound mind; that a short time before his death, on November 17, 1933, he had executed two instruments, one conveying and transferring about $5,000 in bonds and notes, and conveying a one-sixth interest in a house and lot in Cannon County, to his aunt, Mrs. Rosa Fox, one of the defendants, in consideration that she should take care of him for the rest of his life; that James F. Pinkerton was entitled, under the will of his grandfather, A.J. Jernigan, deceased, to the sum of about $1450, and Mrs. Rosa Fox was entitled to about $250 under said will, which sums were still in the hands of the executor; and that J.H. Jernigan, a resident of Childress, Texas, and a son of A.J. Jernigan, deceased, had been appointed and qualified in Cannon County, Tennessee, as executor of the will of A.J. Jernigan. The complainant asked for an injunction to restrain Mrs. Fox from disposing of any of her property and the property she had received from James F. Pinkerton; for an injunction restraining the executor, J.H. Jernigan, from paying over to Mrs. Fox the funds in his hands conveyed by the will of A.J. Jernigan to James F. Pinkerton and to Mrs. Fox; that the conveyances to Mrs. Fox be declared fraudulent and void; and for a judgment against Mrs. Fox for $4,352.67; and that the executor be required to pay over to the Clerk Master the amount in his hands belonging to Mrs. Fox, to be applied on said decree; and that the injunction against the executor be made perpetual.
No attachment was prayed for or levied on said property, and no non-resident publication was had.
Subpoena to answer was issued for the defendants and delivered to the Sheriff who made return that the defendants were not to be found in Cannon County and that he had served notice of the suit upon the Clerk of the County Court in accordance with Code, sec. 8148. Thereupon counterpart subpoena to answer was issued to Rutherford County for Mrs. Rosa Fox and served upon her.
Mrs. Fox filed a plea in abatement on the grounds that J.H. Jernigan, executor, was a non-resident of the State of Tennessee and service on the Clerk of the County Court would not authorize the issuance of counterpart summons to Rutherford County for her; and that said executor was not a material defendant in the cause; therefore the process was void and the court had no jurisdiction; that she was a resident of Rutherford County and the subject-matter in controversy was in Rutherford County, and that the courts of that *Page 162 
County had jurisdiction, and Cannon County had no jurisdiction of the cause.
J.H. Jernigan, executor, filed a plea in abatement on the grounds that he was a non-resident of the State of Tennessee and had not been served with process, had not entered his appearance, and therefore the court had no jurisdiction of the case.
The two pleas in abatement were overruled by the Chancellor.
Whereupon the defendants filed demurrers on the grounds that the Chancery Court of Cannon County had no jurisdiction for the reasons above stated, which demurrers were overruled.
Mrs. Fox filed her answer denying that James F. Pinkerton was of unsound mind, and alleging that the conveyances to her from him, on November 17, 1933, had been made for a valuable consideration: that she should take care of him in his illness, pay nurses', medical, and doctors' bills, and pay his funeral expenses — all of which she had done.
The cause was tried to a jury. Two issues of fact were submitted, as follows:
(1) Was James F. Pinkerton, on November 17, 1933, mentally competent to make a valid transfer of his property?
(2) Did James F. Pinkerton make or execute the deed, contract or agreement, in question, to his property, same being the instrument dated November 17, 1933, filed in the record as exhibit No. 2 to the original bill, to Mrs. Rosa Fox, by his own free will?
The jury answered "No" to the first issue, and, under the instructions of the court, did not answer the second issue.
The Chancellor found and decreed that in accordance with the verdict of the jury on the issue of fact James F. Pinkerton was a person of unsound mind and was not possessed of sufficient mental capacity on the night of November 17, 1933, to execute said deed and contract, and both instruments were null and void, and decree was entered in favor of J.F. Pinkerton and against Mrs. Rosa Fox in the sum of $4,352.67, with interest from February 24, 1934, less the sum of $500, the amount paid by Mrs. Fox in discharge of a note to the bank executed by James F. Pinkerton.
It was further decreed that the complainant, J.F. Pinkerton, administrator, recover of the defendant, Dr. J.H. Jernigan, executor, the net amount that remained in his hands belonging to the estate of James F. Pinkerton, deceased; that said executor pay into the hands of the Clerk Master the balance in his hands belonging to Mrs. Fox, to be held in payment of said decree against her; and that the injunctions be made perpetual.
Mrs. Fox filed motions for a new trial and in arrest of judgment, which were overruled, to which she excepted, and appealed to this court, and has assigned errors, which raise the following propositions: *Page 163 
(1) The court had no jurisdiction of the defendants by service of process on the County Court Clerk for the defendant executor, and then by service of counterpart subpoena to answer on Mrs. Fox in Rutherford County.
(2) There is no evidence to support the verdict, in that James F. Pinkerton had sufficient mental capacity to execute the conveyances.
The defendant executor, Jernigan, did not appeal.
James F. Pinkerton died on January 26, 1935, at the age of about forty-five years.
He was the son of the complainant, J.F. Pinkerton, of Cannon County. A.J. Jernigan, of Cannon County, now deceased, was his grandfather.
His mother had died when he was about three weeks old, and he was reared at the home of his grandfather.
At the age of three years he developed epilepsy, and had epileptic convulsions or fits at intervals all his life.
On account of these attacks he was not sent to school, and as a result was almost totally uneducated.
As he grew up, he and his grandfather bought and sold cattle in partnership, he relying on the judgment of his grandfather.
It appears that he made some money and saved it, and was given $2,000 by his grandfather.
In May, 1928, his grandfather, A.J. Jernigan, died, leaving a will in which Dr. J.H. Jernigan was named as executor. He left a legacy of $2,000 to each of his six children, the heirs of those deceased to take the parent's share. He made his wife residuary legatee in a clause which is as follows:
"I give and bequeath to my beloved wife, Jane Jernigan, all of the remainder of my estate to hold in trust so long as she may live, to have and to use the proceeds thereof if she desires which includes a house and lot in Bradyville, bank stock, bonds, notes, cash, and accounts of every kind and character she may use the income from all of this if she needs it or so much as she may need and desire and at her death, I desire that the corpus or body of said estate shall go into the hands of my executor to be equally divided my six children or the heirs of any that might be dead the said child or children to take the deceased parents share only but before this division is made, all of the expenses of sickness and burial of my said wife shall first be paid out of said estate, either its income or corpus."
After the death of his grandfather, James F. Pinkerton exercised judgment about his financial affairs — he made good investments; when he made loans he required the best security; he carefully kept his check stubs and cancelled checks.
It appears that he had a violent temper and some idiosyncracies, which will be discussed under section 2 hereof.
In the summer of 1934 he underwent a medical examination and it was discovered that he was afflicted with cancer of the bladder. *Page 164 
His uncle, J.H. Jernigan, of Childress, Texas, was a physician. When Dr. Jernigan, heard of his illness, he wrote him a letter advising him that the cancer would cause his death; that he might have a long illness, that he would have to be nursed and taken care of, and incur medical and doctors' bills; that he could not take his money with him; that, in his opinion, he should arrange with somebody to look after him in his illness and pay his funeral expenses in return for his transferring all of his property to him or her.
He was operated on in August, 1934, and afterwards carried to the home of his aunt, Mrs. Rosa Fox.
He decided on the course advised by Dr. Jernigan, and procured lawyers to draw up a contract between himself and Mrs. Fox, transferring to her his bonds and notes, and a deed conveying to her his interest in a house and lot in Cannon County, formerly owned by his grandfather, in consideration for her nursing him and caring for and looking after him in his illness and paying his funeral expenses.
Mrs. Fox took possession of the bonds and notes, cashed the bonds and collected the notes — the whole sum totalling $4,352.67.
He remained at Mrs. Fox's home until his death, in January, 1935.
His father, J.F. Pinkerton, instituted this suit to recover the property from Mrs. Fox, alleging that his son had been of unsound mind all his life.
1. We are of the opinion that the first assignment of error is well made and should be sustained.
It was attempted to give the Chancery Court of Cannon County jurisdiction by the service of process on the County Court Clerk for the non-resident executor, in accordance with Code, sec. 8148. We do not think that that section applies to the service of process for the collection of a distributive share or a legacy, but applies only to suits for a debt or demand due or owing from the testator or intestate. We think it was the clear intention of the legislature to make it apply only to suits by creditors and others who had claims or demands against the decedent, as the statute states: "in case it is desired by any citizen or resident of this state to sue said administrator or executor in his official capacity for any debt or demand, due or owing to any citizen or resident of this state, from his testator or intestate," then service may be had on the County Court Clerk, in the event personal service cannot be had on the administrator or executor.
This statute is in derogation of the common law and must be strictly construed and strictly complied with. 50 C.J., 490, 491, sec. 94.
Personal service of process was required by the common law and in equity. Grace and Anderson v. Hunt, 3 Tenn. (Cook), 341; Grewar v. Henderson, 1 Tenn. Ch., 76.
It is stated in the Restatement of the Law that, with one exception, "all creditors regardless of where they are domiciled can prove their *Page 165 
claims in any state in which administration proceedings have been instituted," but, "if the claim arises out of transactions occurring after the decedent's death and is therefore against the administrator in his personal capacity, it cannot be proved in the administration proceedings in another state." Restatement of Law on Conflicts of Laws, sec. 495.
A suit for a distributive share or legacy may be instituted in the county, probate, or chancery court of the county in which the administration was taken out, and is governed by section 8347 of the Code (Gibson's Suits in Chancery (4 Ed.), sec. 177, subsec. 21), but in order for the court to have jurisdiction there must be personal service of process, or attachment and publication. Gibson's Suits in Chancery (4 Ed.), sec. 60. This is a suit against the executor. Code, sec. 9396.
As previously stated, the jurisdiction of the court was sought through service on the County Court Clerk for the non-resident executor and by counterpart subpoena issued to Rutherford County and served on Mrs. Fox. Of course, if the executor was not a material defendant, and the court had no jurisdiction by service of process on the County Court Clerk, then it did not acquire jurisdiction by the service of the counterpart on Mrs. Fox. Code, sec. 8653; Yancey v. Marriott, Frisby Co., 33 Tenn. (1 Sneed), 28; Gibson's Suits in Chancery (4 Ed.), sec. 188.
However, it will be observed that the bill alleges that James F. Pinkerton conveyed a one-sixth interest in a house and lot in Cannon County of the value of about $1200 to Mrs. Fox as a part of the consideration for her caring for him, and this conveyance, as well as the contract conveying the bonds and personal property, was attacked in this bill. If he had owned any interest in the house and lot in Cannon County, then the filing of the bill in Cannon County would have been proper, and that court would have acquired jurisdiction.
"All bills filed in any court seeking to divest or clear the title to land, or to enforce the specific execution of contracts relating to realty, or to foreclose a mortgage or deed of trust by a sale of personal property or realty, shall be filed in the county in which the land, or a material part of it, lies, or in which the deed or mortgage is registered." Code, sec. 10388, subsec. (2); Gibson's Suits in Chancery (4 Ed.), sec. 177.
And, of course, if the court had acquired jurisdiction of the suit to set aside a deed conveying an interest in land, it would have gone further and has acquired jurisdiction for all other purposes, such as setting aside the conveyance or transfer of the bonds and notes. Gibson's Suits in Chancery (4 Ed.), secs. 36 and 38.
But, after an examination of the whole will of A.J. Jernigan, especially the paragraph above set out, we are of the opinion that this house and lot was devised to the executor and he was to take it *Page 166 
at the death of the testator's wife and sell it and distribute the proceeds among the six heirs. We think it fairly inferable from the will that the testator intended that the widow, Mrs. Jernigan, should have the use of the income of this house and other property so long as she lived and at her death the executor should take the property, including the house and lot, sell it, and divide the proceeds. The house and lot in the village of Bradyville was worth only about $1200, and, of course, it was not susceptible of partition in kind among six heirs, so the only rational conclusion to be arrived at is that the testator intended that the executor sell the propery and distribute the proceeds.
The authority of the executor to sell and convey land must come from the will, but it may, however, be given by necessary implication as well as by express language. So, where the testator requires such disposition of the property as manifestly cannot be made without a sale, the power of sale necessarily results and devolves upon the executor charged with the execution of the will. Sizer's Pritchard on Wills and Executors, sec. 715.
"The intention of the testator need not be declared in express terms in the will, but it is sufficient if the intention can be clearly inferred from particular provisions of the will, and from its general scope and import. The courts will seize upon the slightest indications of that intention which can be found in the will to determine the real objects and subjects of the testator's bounty. The inference as to the intent need not be irresistible or such as to exclude all doubts possible to be raised, but must, nevertheless, be such as to leave no hesitation in the mind of the court, and must not rest on mere conjecture. In discovering the intention of the testator by judicial construction, the courts should apply natural methods of finding and weighing evidence." 28 R.C.L., 217, 218, sec. 176; McClure v. Keeling,163 Tenn. 251, 255, 43 S.W.2d 383.
We do not think that this case is governed by the case of Alexander v. Wallace, 76 Tenn. (8 Lea), 569, as in that case the testator owned several hundred acres of land and he directed that his executor divide this land among his heirs, and there was no reason for the executor to sell the land to distribute the proceeds.
Now, having held that the executor was empowered to sell this house and lot, it results that, under the doctrine of equitable conversion, the legatees' interest in the house and lot was personal property, and must be treated as such. Sizer's Pritchard on Wills and Executors, sec. 457.
It results that both the contract and deed conveyed James F. Pinkerton's personal property, and Code, sec. 10388, subsec. (2), does not apply, and the Chancery Court of Cannon County had no jurisdiction.
It was strenuously insisted that the executor Jernigan was not a *Page 167 
material defendant, therefore the Chancery Court acquired no jurisdiction of Mrs. Fox. We think there is no doubt about his being a material defendant. Helm Pickle v. Barnes, 69 Tenn. (1 Lea), 388; Gibson's Suits in Chancery (4 Ed.), secs. 90, 91. But this question becomes immaterial.
This disposes of the case, and the suit will be dismissed, but as the case may be carried to the Supreme Court we will pass upon the assignment as to his sanity.
 . . . . . . .
It results that all the assignments of errors are sustained, the decree of the Chancellor is reversed and the suit is dismissed on the first assignment of error.
The costs of the cause, including the costs of the appeal, are decreed against the complainant, J.F. Pinkerton.
Faw, P.J., and Felts, J., concur.